THE BALTIMORE & OHIO RD. CO. ET AL. v. FISH & LYBARGER CO.

*Railroads—Loss of shipment—Recovery not barred because claim not presented within six months—Delay in presenting claim caused by carrier—Section 8604a, U. S. Comp. Stats.—Section 7976, Barnes' Fed. Code.*

In shipper's suit against carrier for loss of shipment, defended on ground that claim was barred for failure to present it within six months after reasonable time for delivery of property had elapsed, evidence showing that delay in presenting claim was caused by carrier *held* to entitle shipper to recover, in view of U. S. Comp. Stats., Section 8604*a*, relieving shipper from necessity for filing claim when loss was due to delay or damage while loading or damage in transit by negligence.

(Decided April 8, 1925.)

ERROR: Court of Appeals for Knox county.

*Messrs. Frazier & Frazier* and *Mr. W. J. Sperry,* for plaintiffs in error.
*Mr. F. O. Levering,* for defendant in error.

HOUCK, P. J. The plaintiffs in the lower court, Fish & Lybarger Company, brought suit against the Baltimore & Ohio Railroad Company and others, to recover the sum of $166.50, with interest, for the loss of a case of shoes shipped to them by the M. N. Arnold Shoe Company, of North Abington, Massachusetts, claiming that the loss of the case of shoes was caused by the negligence of the defendants.

The answer of the defendants in the common

pleas court stated the following as a defense to the claims made in the petition:

"Defendants say that the transportation of the shoes described in the petition by the New York, New Haven & Hartford Railroad Company and the Baltimore & Ohio Railroad Company was pursuant to a certain written contract or agreement familiarly known as, 'Uniform Domestic Straight Bill of Lading,' and not otherwise; that one of the terms or conditions of said written agreement or bill of lading provided, in part, as follows:

" 'Claims for loss, damage, or injury to property must be made, in writing, to the originating or delivering carrier or carriers issuing this bill of lading within six months after delivery of the property  *  *  *  or, in case of failure to make delivery, then within six months  *  *  *  after a reasonable time for delivery has elapsed.'

"This answering defendant further says that neither the plaintiff, nor any one for it, presented to the Baltimore & Ohio Railroad Company or the New York, New Haven & Hartford Railroad Company a claim for loss, in writing, within six months after the delivery of the property, or within six months after a reasonable time for delivery had elapsed."

Upon the issues raised by the petition and answer, the cause was submitted on the evidence to the trial judge, without the intervention of a jury, the court finding for the plaintiffs for the full amount sued for.

The plaintiffs in error seek a reversal of this judgment, claiming that it is not sound in fact and law. One of the material allegations of the petition is:

"The defendant F. G. Hadley, agent of the Baltimore & Ohio Railroad Company, at Mt. Vernon, Ohio, requested the plaintiff to delay making proof of claim for the loss of said case of shoes until he could obtain his revenue billing therefor; that said revenue billing was not obtained by said defendant F. G. Hadley until in May, 1923, which showed the loss of said case of shoes No. 3,052."

It will be observed from the pleadings that the real controversy is one of fact, under a proper application of the law thereto; viz., Was the claim for loss presented to defendants below within six months after the delivery of the property, or within six months after a reasonable time for delivery had elapsed; and, if not, was anything done by the defendants to toll said time?

Mr. Fish, one of the plaintiffs, as appears on pages 3 and 4 of the bill of exceptions, testified as follows:

"Q. Now, when this consignment of three cases of shoes came through, you may state, Mr. Fish, what was done.

"A. Well, when the shoes came in, we opened them up and took our invoice and checked them up, and we found that they were short the one case, and I think I immediately called the office and reported the shortage.

"Q. Whom did you talk to, do you remember?

"A. Well, I think Mr. Hadley.

"Q. Now you may state to the court what conversation you had, or what was done with reference to the shortage.

"A. Well, Mr. Hadley said that, I think, that they had made a notation, or *would* make a notation of it; that they hadn't received their revenue

billing, and to wait, and that probably the case would show up, as that had happened before. We now and then would have a shipment come in short, and in a day or two, or in a few days, the balance of it would come in, and so it went at that. We marked our bill or invoice, 'Short one case,' and just let it go at that, and waited, as he told us to.

"Q. Did you have more than one conversation with Mr. Hadley about the shortage?

"A. Yes; I don't know how long it was after that. I called the office again, and I think I talked to Mr. Hadley, and he said that they hadn't gotten their billing yet, and the shoes hadn't shown up, as, of course, we hadn't received them. And it went on after that. I don't know how often I called. I don't know, more than twice or three times. We had had shortages before, but it always came out all right, but we usually keep track of the thing, and I called up and asked about it several times.

"Q. Now during these conversations what, if anything, did you say to him, or what, if anything, was done about your filing a claim for this shortage?

"A. Well, I don't know as there was any mention made of filing a claim. Of course, it was generally understood that, if the shipment never came, we would make a claim. He had told us that they hadn't their billing yet and couldn't check it up, and that it might show up yet, and, of course, I confess I was ignorant of the fact that there was a time limit on filing a claim.

"Q. Was there anything in the conversation, or any of the conversations that you had, by Mr.

Hadley, asking you to withhold the making of the claim until he got his revenue billing through?

"A.  Well, I think there was, in one of the conversations.  He requested that we withhold that until he got his billing.

"Q.  And did he say why he wanted that done?

\*  \*  \*

"Q.  What, if anything, was said by Mr. Hadley as to his being unable to verify any shortage until he did get his revenue billing?

"A.  Well, that was the idea that I got; that was his words to me; that he couldn't check the shipment short until they got their billing.

"Q.  And that is why he asked you to withhold the filing of the claim?

"A.  Yes, sir.

"Q.  Now, do you know about when it was that the revenue billing was received by Mr. Hadley, or when you got word of it?

"A.  Well, it was a very few days prior to the date of our filing.  When Mr. Hadley received the billing, he came and told us, and I didn't have the original bill of lading at the time, and I immediately wrote to the Arnold Company to give us the original bill of lading, and in a few days we got that and filed a claim.

"Q.  Now, you got the original bill of lading about, or a few days prior to the time you filed the claim?

"A.  Yes, sir.

"Q.  Had you any knowledge, up until you did receive this original bill of lading, in 1923, as to any condition here limiting the time as to presenting a claim?

"A.  No, sir; I didn't know that until I received

a letter from the claim agent, stating that the claim would be rejected on the grounds of the statute of limitations.

"Q. That was the first intimation you had of any limitation?

"A. Yes, sir."

It is argued by counsel for the carriers that they should be relieved under the facts in this case from liability under favor of the Interstate Commerce Act. We cannot and do not agree in this claim, and it does seem to us that, under the facts shown by the record, the application thereto of the latter part of Section 8604a, U. S. Comp. Stat., (Section 7976, Barnes' Fed. Code), is decisive of this case in favor of defendants in error. That statute reads:

"Provided, however, that if the loss, damage, or injury complained of was due to delay or damage while being loaded or unloaded, or damaged in transit by carelessness or negligence then no notice of claim nor filing of claim shall be required as a condition precedent to recovery."

It is clear to us that under the facts and law there is no prejudicial error in the record, and, further, feeling that substantial justice has been done all parties in the premises, we now affirm the judgment.

*Judgment affirmed.*

SHIELDS and PATTERSON, JJ., concur.